(No. 17283.—Decree affirmed.)
CHARLES A. GROVE *et al.* Appellees, *vs.* EFFIE TEMPLIN
*et al.*—(MYRTLE LITTERAL, Appellant.)

*Opinion filed April 23, 1926.*

1. PARTITION—*an appeal lies from dismissal of cross-bill on demurrer.* Where, in a partition suit, a cross-bill is filed praying for specific performance of an alleged oral agreement for conveyance of the property involved, an appeal lies from the dismissal of the cross-bill on demurrer, as the order sustaining the demurrer and dismissing the cross-bill, which the cross-complainant elected to stand by, is a final order.

2. SPECIFIC PERFORMANCE—*what is not a sufficient allegation of possession under alleged oral contract.* In a cross-bill praying specific performance of an alleged oral agreement for conveyance of premises involved in a partition suit, the allegation that the cross-complainant and her husband "went into possession of said property" is merely a conclusion and is not a sufficient allegation of facts showing actual change of possession, where the alleged oral agreement was for the care and support of the owner of the premises, who was the cross-complainant's grandfather, and there is nothing to show that any change occurred in the occupation of the premises by reason of the agreement.

3. SAME—*what is not an allegation of value of property.* In a cross-bill for specific performance of an alleged oral agreement for a conveyance in consideration of the care and support of the owner of the premises in his lifetime, an allegation that the property involved was invoiced at a certain figure in the inventory of the owner's estate is not an allegation of value.

4. SAME—*allegations as to terms and performance of an oral agreement for conveyance must be clearly stated.* An oral agreement to convey real estate in consideration of services to be rendered must be clear, definite and unequivocal in its terms, and a bill to enforce such an agreement must allege its terms and the facts constituting performance so definitely, clearly and precisely that the court can determine from the bill whether the contract is fair, just and not unconscionable and whether the circumstances are such that equity requires that the contract should be specifically enforced.

5. SAME—*what necessary to take oral contract out of Statute of Frauds.* To take an oral agreement for conveyance out of the operation of the Statute of Frauds by reason of its part performance and the making of lasting and valuable improvements the acts of

part performance must be clearly shown, and they must be such as cannot, under the circumstances, be fairly compensated in an action at law and such that to allow the defense of the statute would be a virtual fraud on the party seeking performance of the contract.

6. SAME—*when allegations of a cross-bill for specific perform-ance of oral agreement for conveyance are insufficient.* In a parti-tion suit, the allegations of a cross-bill praying specific perform-ance of an alleged oral agreement for conveyance of part of the property involved, in consideration of the care and support of the owner, are insufficient, where there is no description of the prop-erty claimed, no sufficient allegation of its value, no allegation showing the taking of possession or the making of improvements except the building of a fence, which is not shown to be a perma-nent and valuable improvement, and where the allegations of acts done in performance of the agreement are indefinite and there is no showing why the cross-complainant cannot be compensated there-for out of the owner's estate.

APPEAL from the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER, Judge, presiding.

C. E. BEACH, (NELLY B. KESSLER, of counsel,) for appellant.

FRANK M. CRANGLE, for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The circuit court of Iroquois county sustained a demur-rer to and dismissed an amended cross-bill filed in the par-tition suit brought for the partition of lots 1, 2, 4 and 6 of Wills' subdivision in the city of Watseka, and Myrtle Lit-teral, the complainant in the cross-bill, has appealed.

The amended original bill showed that David F. Grove died intestate on May 5, 1924, owning the lots named, lot 6 being under a contract of sale to Frank Beaver and Edith Beaver, and leaving as his heirs a son, Charles A. Grove, and four daughters, one of whom was Effie Templin, the mother of the cross-complainant. The son and three of the

daughters filed a bill for partition against the fourth daughter, Effie Templin. Myrtle Litteral was made a defendant to the bill under an allegation that she claimed an equitable interest in the land as shown by a written notice signed by her, filed and recorded in the recorder's office, addressed to all whom it may concern, that she was the equitable owner of lots 4 and 6, the title of record thereto standing in the name of David Grove, deceased. The bill denied that she was such equitable owner, and averred that the record of the notice was a cloud on the title, which the bill prayed should be removed. She answered the bill, admitting the ownership, death and intestacy of Grove, the contract of sale of lot 6, the heirship of the parties and their interests as set out in the bill, subject to her rights as equitable owner of lots 1, 2 and 4. Her amended cross-bill alleged that she entered into an oral contract with Grove, made about the year 1918, whereby she and her husband should assume the care and maintenance of Grove and should furnish and provide for him a home and comforts thereof for and during his natural life, and that she should make certain lasting and valuable improvements upon the property mentioned in the cross-bill, and in consideration thereof Grove agreed that the described premises should become hers and that he would convey the title to her by deed or will; that in pursuance of the agreement she and her husband went into possession of the property, paid the taxes thereon thereafter, and provided for, cared for and furnished a home for Grove from the time of the making of the agreement until he died, except for the period of about a year; that about the year 1920 her husband went to Kentucky and engaged in tobacco raising as a tenant farmer, and shortly after she followed him and for a part of that year resided with him in Kentucky; that this was done under an agreement with Grove that if they should find it desirable and profitable to make a permanent home in Kentucky he would go there and make his home with them,

otherwise they should return to Watseka and resume the previous arrangement; that before the year expired it became evident that it would not be profitable for them to take up a permanent residence in Kentucky and she returned to Watseka and resumed the former relation; that during her absence Grove was given the care and attention required by her contract by Effie Templin, and this was by agreement with Grove. The amended cross-bill also alleged that Grove undertook to make a will devising the real estate to her and Effie Templin jointly, but it was not properly executed and for that reason probate of it was denied when it was offered for probate in the county court. It was further alleged that after the agreement was made the fences on the premises became dilapidated, and pursuant to her agreement she bought, at a cost of approximately $50, a substantial metal fence and built it, the work being done by her husband with some slight assistance from Grove; that Grove was seventy-six years of age at the time of his death and at all times during the period covered by the agreement needed constant care, and that all things pertaining to her duties and conduct toward Grove, as provided for in her oral agreement, were fully and completely performed according to his express wishes, from the time of the agreement until his death; that she devoted her time and labor to his care and maintenance, furnished him with food and contributed various sums of money to his wants and necessities, provided him with every comfort of home and devoted herself to the duty of making his last years comfortable and pleasant; that she received no compensation whatever from any source for her services or expenditures in this respect; that the real estate was duly inventoried as a part of the estate of Grove and in the inventory was invoiced as of the value of $2000,—a sum which would not more than reasonably compensate her for her services and expenditures. The bill prayed for a specific performance of the contract.

The appellees contend that the appeal is from an interlocutory order sustaining a demurrer, which was not appealable. The record shows that the cross-complainant elected to stand by the amended cross-bill and the court thereupon dismissed the cross-bill. This was a final order which disposed of the appellant's claim, and an appeal from it was properly allowed.

The grounds of the demurrer were that the contract was not in writing and was therefore void by virtue of the Statute of Frauds, and that the allegations with reference to the contract and its performance were so vague, indefinite and uncertain as not to justify a decree for specific performance. The bill contains no description of the property which was the subject matter of the contract. The original bill described four lots of which the ancestor died seized, and alleged a claim by the appellant of an equitable interest in all or a part of the premises. The amended cross-bill, after reciting the filing of the original bill for the partition of lots 1, 2, 4 and 6, alleges in regard to the contract that "your oratrix entered into a verbal agreement with the said David F. Grove, whereby your oratrix and her husband should assume the care and maintenance of the said David F. Grove and should furnish and provide for him a home and the comforts thereof for and during his natural life; that it was further orally agreed by and between your oratrix and the said David F. Grove that your oratrix should make certain lasting and valuable improvements upon the property mentioned and described herein, and in consideration of said promises and agreements the said David F. Grove promised and agreed that said described premises should become the property of your oratrix; that at the time of said oral agreement it was further agreed by and between your oratrix and the said David F. Grove that before his death he would either convey to your oratrix by good and sufficient deed the title to said described real estate, or that he would make, pub-

lish and declare a last will and testament, by the terms of which the title to the property herein described should become vested in your oratrix." There is no other description of property in the cross-bill, except in the prayer that the title to said lots 1, 2 and 4 may be vested and decreed to be in oratrix. The notice which the complainant filed for record limited her claim of equitable ownership to lots 4 and 6. The prayer of the bill does not include lot 6, which was included in the contract of sale subsequently made by Grove with the Beavers, but does include lots 1 and 2, which were not included in the notice.

There is no allegation of facts showing the taking of actual possession of any property. The language of the bill is that pursuant to the oral agreement the cross-complainant and her husband "went into possession of said property." This allegation is only a conclusion of the pleader. If there was an actual change of possession the particular facts showing such change should be alleged. The cross-complainant was the grand-daughter of David F. Grove, the owner of the property. There is no allegation in regard to the character of the property, whether or not it was improved, whether it was occupied or vacant, or whether Grove, at the time of the alleged agreement, was in the actual possession of it. It is alleged that the cross-complainant provided for, cared for and furnished a home for Grove, but there is no allegation as to any particular acts which she did, and no facts are alleged showing any actual change in the relation of the parties to the possession or occupation of the property. Whether the property had before been occupied by the grandfather as a home or otherwise does not appear, or whether any change occurred in the occupation by reason of the agreement. The alleged occupation by the cross-complainant and her husband appears to have been abandoned during a part of the year 1920.

The cross-bill is also uncertain in regard to the improvements to be made on the property. The allegation is of

an agreement "to make certain lasting and valuable improvements on the property mentioned." There is no intimation as to what those improvements were. The only work alleged to have been done or expenditure made on the property was the replacement, at a cost of $50, of a fence which had become dilapidated after the agreement was made, but there are no allegations from which it can be determined that this was a permanent and valuable improvement of the property. There is no allegation of the value of the property. The statement is made that it was invoiced in the inventory of the estate, but this is not an allegation of value.

The cross-bill alleges that Grove was seventy-six years old at the time of his death and during all the period covered by the agreement he needed constant care, and that she devoted her time and labor to his care and maintenance, furnished him with food and contributed various sums of money to his wants and necessities. If he was seventy-six years old at the time of his death he was not over seventy years old at the time of the agreement, and there is no allegation in the bill of any condition or circumstances showing that he needed constant care. The allegation that she devoted her time and labor to his care and maintenance is altogether indefinite and does not show any particular acts that she did or any necessity for doing them. The objection of indefiniteness also applies to the allegation that she furnished him with food and contributed various sums of money to his wants and necessities.

An oral agreement to convey real estate in consideration of services to be rendered must be clear, definite and unequivocal in its terms, and a bill to enforce such an agreement must allege the terms directly, clearly and precisely and must also show what has been done in performance of the agreement. To take such a contract out of the operation of the Statute of Frauds by reason of its part

performance and the making of lasting and valuable improvements the acts of part performance must be clearly shown, and they must be such as cannot, under the circumstances, be fairly compensated in an action at law and such that to allow the defense of the Statute of Frauds would be a virtual fraud on the party seeking performance of the contract. (*Gladville* v. *McDole,* 247 Ill. 34.) Whether the specific performance of a contract will be decreed depends largely upon the particular facts in each case, and in a bill which seeks specific performance the facts must be stated so definitely and clearly that the court can determine from the bill whether the contract is fair, just and not unconscionable and whether the circumstances are such that equity requires that the contract should be specifically enforced. (*Edwards* v. *Brown,* 308 Ill. 350; *Davier* v. *Kaiser,* 280 id. 334.) It cannot be told from this cross-bill, in the absence of allegation as to the value of the property, the physical and mental condition of Grove, the acts done by the appellant in performance of the alleged agreement, the acts done in regard to the possession of the property and the character of her alleged possession, whether the contract was fair, just and not unconscionable, whether the appellant was in possession under the alleged agreement, and whether the circumstances require a specific performance of the contract to prevent the perpetration of a fraud on her. It is entirely consistent with the amended cross-bill that the appellant and her husband were living in her grandfather's house with him at the time the alleged agreement was made or moved in with him afterward, and continued to live there with him, except during their absence in Kentucky, until he died, and there is nothing to indicate that her services would not be fully compensated by a judgment against his estate for their value. The contract itself is vague and uncertain, the allegations of acts done in performance of the contract are equally indefinite, the building of a fence is not shown to be a valuable and lasting

improvement, and no reason is shown why complainant can not recover against the estate of Grove the value of any services rendered to him.

The demurrer was properly sustained to the cross-bill, and the decree is affirmed.    *Decree affirmed.*